### STEPHENS et al. v. UNITED STATES.
### No. 587.

United States District Court
E. D. Kentucky.

March 7, 1949.

Redwine & Redwine, Winchester, for plaintiffs.

Claude P. Stephens, U. S. Atty., Lexington, for defendant.

FORD, Chief Judge.

On this the 2nd day of March, 1949, upon the submission of this cause to the Court without the intervention of a jury upon the pleadings, proof and exhibits filed, and having heard arguments of counsel for both the plaintiffs and the defendant, the Court finds:

#### Findings of Fact.

1. The insured, Ben Jordon, was inducted into the Army of the United States on April 9, 1942, and served in the Army until he received an honorable discharge on September 7, 1945. At the time he entered the service he weighed one hundred and fourteen pounds and when he was discharged, he weighed one hundred and thirty pounds. It is not clear from the evidence when the increase in weight occurred. He was hospitalized in April, 1945, and remained in the hospital for about five days. His sickness at that time was diagnosed as gastric neurosis, from which he suffered cramps and

pains. It appears he served actively in the Army from that time until his discharge. When he came home, his relatives and those interested in him observed a change in his condition which they have described in various ways, the most striking of which it seems to me is that he was short of breath, apparently easily exhausted from even slight exertion. One witness whom he visited described him, after playing for a short while with her children, as apparently in an exhausted condition and shortly after he returned home he began having some smothering spells, occasionally putting his hand to his heart as if in pain from that source or having some difficulty in getting his breath. At any rate, during the months of October, November and December, 1945, he was having these spells which he attributed to his heart. On one occasion it was necessary for one of his nieces to help him to his bed at a time when he had a severe spell illustrative of a man having a serious heart attack. This testimony was given by lay witnesses who did not know anything about his condition from a medical standpoint and were for the most part his friends and relatives, but their statements are without substantial contradiction. While the testimony should be qualified in weighing it by the interest and relationship of the witnesses that does not entirely nullify it, however much we regard that as effective.

2. The only medical testimony given was that of Dr. E. E. Edwards, Irvine, Kentucky, who diagnosed his case as endocarditis. Dr. A. S. Warren of Lexington, Kentucky, a specialist in heart disease, testified that endocarditis is an inflammation of the lining of the heart and brings about such a condition that pieces of the lining of the heart may slough or fall off, getting into the blood stream, constituting an obstruction to some extent, and that is when the pain or smothering spells arise. Insured, obviously at the time his policy lapsed, so far as we can determine from this evidence, was suffering from just that sort of condition.

3. The insured was suffering from endocarditis or inflammation of the lining of his heart and that condition existed during the time the policy was in force and effect under premium-paying conditions, in other words, that it was prior to November 1, 1945.

4. It would have been dangerous to the life of the insured, Ben Jordon, for him to have engaged in any kind of work, even light work. For him to have engaged in the duties of a chef or cook, in which avocation he had been trained during his three years in the Army, obviously would have been a very dangerous thing for him to do. Insured expressed a willingness to try to secure a job as cook, but that does not alter the fact that he might have been taking his life in his hands to have done so.

5. The insured, Ben Jordon, during the period from approximately October 1, 1945, until his death on January 29, 1946, was totally disabled within the meaning of that term, in that his condition was such that for him to have engaged in any work continuously would have endangered his life.

### Conclusions of Law.

1. Total disability within the meaning of the policies of insurance sued on means more than that which is partial, but it does not mean helplessness or complete disability, bedridden or paralyzed. Disability does not cease to be total because of insured's intermittent occupation or business activities, if without the exercise of ordinary care they are engaged in at the risk of substantially aggravating the ailment with which insured is afflicted. The character of the insured's affliction may be such that work, though slight, aggravates or increases the danger to his life. If insured's condition is such, however willing he may be to work, however much he may work at some light duty, total disability is interpreted to mean not only that he does not work, but that his condition is such that it would aggravate the danger from the disease from which insured is suffering.

2. Section 802(r) of Title 38 U.S. C.A., provides that in any case in which premiums are not waived upon an application for such waiver solely because the insured died prior to the continuance of total disability for six months, his insurance shall

622

be deemed to be in force at the date of his death and the unpaid premiums shall become a lien against the proceeds of his insurance. The insurance covered in the two policies sued upon in this case, aggregating $10,000, was therefore, in force at the date of the death of the insured.

3. The application by the plaintiffs, as beneficiaries under the policies of insurance issued by the defendant upon the life of the deceased, Ben Jordon, having been made within the time provided by Section 802(r) of Title 38 U.S.C.A., they are entitled to judgment herein.

Judgment will be prepared in accordance with these findings.