John WATTS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–99–00811–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 16, 2001.

William Paul Mewis, Houston, for appellants.

Roger A. Haseman, Houston, for appellees.

Panel consists of Justice HUDSON, Senior Chief Justice MURPHY, and Former Justice AMIDEI.*

* Senior Chief Justice Paul Murphy and Former Justice Maurice Amidei sitting by assignment.

## OPINION

HUDSON, Justice.

A jury found appellant, John Watts, guilty of the misdemeanor offense of water pollution. The court assessed punishment at one year confinement in Harris County Jail, probated for two years, and a $10,000 fine, plus court costs, with $9,000 of the fine probated, one hundred hours community supervision, and other standard conditions of probation. In nine issues, appellant alleges the trial court erred in refusing to suppress evidence, challenges the validity of the jury charge, asserts the evidence is factually insufficient to support appellant's conviction, and contends the water pollution statute is unconstitutionally vague. We affirm.

In June of 1998, the Harris County Health Department received a complaint regarding trash and junk strewn about a piece of property located in an unincorporated portion of Harris County. Deanna Copeland, an inspector with Harris County's Health Department, went to the location to investigate the complaint. She discovered that the complaint was valid and, after further investigation, determined that appellant owned the property. Inspector Copeland then mailed appellant a notice asking him to abate the nuisance on his property. Appellant did not respond to the notice. On August 5, 1998, Copeland returned to the property accompanied by her supervisor, Inspector Phillip Moore. The property was still blanketed with trash and debris. Copeland and Moore walked the adjoining property line and noted the odor of sewage coming from appellant's property. They then went to appellant's door to discuss the nuisance. A man, later identified at trial as appellant, came to the door. The health inspectors identified themselves and asked the man if he was aware of the nuisance problem. The man stated he was appellant's

brother and walked away. The inspectors left the property.

Inspector Copeland sent appellant another notice, via registered mail, but it was returned unclaimed. She then sent appellant another notice, via first class mail. Copeland returned to the property on October 20, 1998. She again smelled sewage and was able to photograph, while standing on adjacent property, sewage pooling on appellant's land. On November 3, 1998, Copeland returned to the property with Inspector Michael Pugh. They entered appellant's property and a man exited a trailer and told them to leave. Before leaving, Pugh advised the man he needed to address the sewage problem and gave the man his card. Copeland and Pugh returned to the property on November 9, 1998, accompanied by three Harris County Deputy Constables, Sgt. Bill Ruland, Deputy Sanford, and Deputy Herra. The deputies knocked on appellant's door. No one answered. Deputy Sanford discovered a pool of sewage while walking to the rear of appellant's residence to knock on the back door. The team then inspected the entirety of the property. They discovered a broken waste pipe and another pool of sewage. Inspector Pugh took a sample of the sewage. Sgt. Ruland photographed the property. A laboratory analysis of the sample taken by Pugh revealed that the substance contained fecal coliform.

██ In his first issue, appellant contends the trial court improperly refused to suppress evidence obtained during the search and seizure on appellant's property and testimony related thereto. Generally, we review a trial court's ruling on a motion to suppress for an abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim.App.1999). The trial court is the sole trier of fact and judge of the weight and credibility of the evidence. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.

1999). Accordingly, we afford almost total deference to a trial court's determination of historical facts supported by the record and its rulings on mixed questions of law and fact when those findings and rulings are based on an evaluation of credibility and demeanor. *Maestas v. State*, 987 S.W.2d 59, 62 (Tex.Crim.App.1999). In reviewing a trial court's decision, we view the evidence in the light most favorable to the trial court's ruling. *Id.* However, the misapplication of law to the facts of a particular case is a *per se* abuse of discretion. *Ballard*, 987 S.W.2d at 893. Furthermore, we review *de novo* mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Maestas*, 987 S.W.2d at 62.

On November 9, 1998, Inspectors Copeland and Pugh, Sgt. Ruland, and the two other deputy constables entered appellant's property, searched the area, and removed a soil sample without a search warrant or appellant's consent. Appellant filed a pre-trial motion to suppress evidence asserting that the search and seizure violated the Texas Constitution and Article 38.23 of the Code of Criminal Procedure. The court denied the motion after hearing counsel's arguments during the State's presentation of its evidence. The court held that section 343.024 of the Health & Safety Code, entitled "Authority to Enter Premises," authorized the State to enter the premises to inspect and investigate the nuisance caused by the standing sewage and the debris on the property.[1]

▮ The Texas Constitution provides that the people of this state "shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches." TEX. CONST. art. I, § 9. This provision is enforced by an exclusionary rule which declares that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.2001). Accordingly, warrantless intrusions and searches are presumptively unreasonable. *Roth v. State*, 917 S.W.2d 292, 299 (Tex.App.—Austin 1995, no pet.). Hence, police officers must normally obtain a valid search warrant before conducting a search or seizure. *Martinez v. State*, 880 S.W.2d 72, 76 (Tex.App.—Texarkana 1994, no pet.).

▮ Here, the incriminating evidence, i.e., the raw sewage was observed, photographed, and gathered in an open area behind appellant's mobile home. There is, of course, no reasonable expectation of privacy in open fields. *Oliver v. United States*, 466 U.S. 170, 176, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214, 222 (1984). However, the law does recognize an expectation of privacy in the curtilage, "an area of domestic use immediately surrounding a dwelling ... [that is] usually but not always fenced." *United States v. Van Dyke*, 643 F.2d 992, 993–94 (4th Cir.1981).

▮ We first observe that not every trespass upon the curtilage constitutes a search. Here, for example, law enforcement authorities were merely attempting to contact appellant. Moreover, it is well established that law enforcement agents

---

1. Section 343.024 states:
   (a) A county official, agent, or employee charged with the enforcement of health, environmental, safety, or fire laws may enter any premises in the unincorporated area of the county at a reasonable time to inspect, investigate, or abate a nuisance or to enforce this chapter.
   (b) Before entering the premises, the official, agent, or employee must exhibit proper identification to the occupant, manager, or other appropriate person.

have the same right as any other person to enter onto residential property and walk up to the front door. *Nored v. State,* 875 S.W.2d 392, 396 (Tex.App.—Dallas 1994, pet. ref'd). Here, law enforcement first went to the front door of appellant's mobile home. After knocking and receiving no answer, one of the officers walked to the back of the trailer to knock on the back door. It was at this time that the officer observed the pool of raw sewage in the back yard.

Most home owners arguably have a greater expectation of privacy in their back yards than they do in their front lawns. Common courtesy and a respect for privacy demand that visitors approach the front of a house. In many cases, homeowners shroud their back yards with a "privacy" fence for the specific purpose of enhancing their expectation of privacy in their back yards. Thus, most homeowners would rarely expect a stranger to knock on the back door. However, in some instances, courts have held it was not unreasonable for police to knock on the back door of a residence. For example, in *Long v. State,* 532 S.W.2d 591 (Tex.Crim. App.1975), the police went to the front door of a house to speak to the owner. Receiving no answer, the police then went to the back door and knocked again. Again the police received no answer. However, as they completed their circuit of the home on the way back to their car, they passed by on open window from which the strong odor of marihuana was detected. The Court of Criminal Appeals upheld the officer's actions. The court concluded that because the defendant's home was "a very small frame house with a carport attached ... it does not seem at all unreasonable for the Sheriff and his deputy to have continued around the structure after receiving no answer at the rear door." *Id.* at 595.

Likewise, in *Atkins v. State,* 882 S.W.2d 910 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd) the police went simultaneously to the front and back doors in an attempt to contact the defendant. As one officer rounded the back corner of the house, he observed the defendant attempting to dispose of contraband. Although the back yard was fenced and the police were unquestionably within the curtilage of the home, the court held they were not conducting a search when they observed the defendant in possession of the narcotics. Accordingly, the court upheld the actions of the police.

Here, law enforcement officers had previously made two unsuccessful attempts to communicate with appellant via the mail. In an effort to contact appellant, law enforcement agents went to the front door of his mobile home. When they received no answer, one of the officers proceeded to the rear of the home to knock on the back door. Thus, even if law enforcement officers were within the curtilage, they did not enter with the purpose of conducting a search.

This is not to say, however, that the sewage was discovered inadvertently. The sewage could be seen and was clearly apparent from the side boundaries of appellant's property. While we cannot say the officer was necessarily surprised by his discovery of sewage behind appellant's home, the legislature has authorized county officials charged with the enforcement of health, environmental, safety, or fire laws to enter any premises in an unincorporated area of the county at a reasonable time to inspect, investigate, or abate a public nuisance. TEX. HEALTH & SAFETY CODE ANN. § 343.024 (Vernon 2001). The statute requires that proper identification be displayed to the occupant before conducting the search. Thus, under the statute, law enforcement agents would, in

most instances, be required to enter the curtilage to display their identification to the owner or occupant.

Here, photographs of appellant's small mobile home show it to be in a wooded area. Open areas roughly define what might be considered a front and back yard, but there does not appear to be any fencing or landscaping to shield the back yard from public access or view. Because of the open nature of the surrounding property, the lack of a well defined yard, the absence of a privacy fence, the unobstructed visibility of appellant's back yard from adjacent properties, and the small size of his home, we find appellant could only have had a minimal expectation of privacy. Accordingly, under the record presented here, it was reasonable for a law enforcement agent to knock on the back door in an attempt to make contact with appellant and/or display identification.

■■■ Finally, the evidence seized, i.e., the sewage sample, was taken under the "plain view" exception. The officers were lawfully on appellant's property, and it was immediately apparent to the inspectors and deputies that they had evidence before them. *See Green v. State*, 866 S.W.2d 701, 704 (Tex.App.—Houston [1st Dist.] 1993, no pet.). A search conducted to promote public health under chapter 343 of the Health and Safety Code is not invalidated simply because the fruits of the search and seizure resulted in a prosecution under the Water Code. Accordingly, appellant's first issue is overruled.

■■ Appellant's second, third, fourth, and fifth issues concern the jury charge and the trial court's decision to take judicial notice of the holding of a Court of Criminal Appeals opinion. In all four issues, appellant contests the validity of the trial court's charge to the jury. When assessing alleged error in the charge, we must first determine whether error, in

fact, exists in the charge. *Hutch v. State*, 922 S.W.2d 166, 170–71 (Tex.Crim.App. 1996). Here, the State asked the trial court to take judicial notice of a statutory interpretation made by the Court of Criminal Appeals in *American Plant Food Corp. v. State*, 587 S.W.2d 679 (Tex.Crim.App. 1979). There the court held that a "drainage ditch" is a watercourse that falls within the scope of the Water Code's statutory definition of "water" and "waters in the state." *Id.* at 682. The trial court acquiesced to the State's request and took judicial notice of *American Plant Food*'s holding and instructed the jury in its charge that the drainage ditch fell within the statutory definition of "waters in the state."

■■■ Appellant's second issue asserts that the trial court erred in taking judicial notice of an opinion of the Court of Criminal Appeals and orally instructing the jury on law consistent with that opinion. Appellant contends a trial court cannot take judicial notice of the holding of a superior court's opinion. We disagree. A rudimentary concept of our system of jurisprudence is that a lower court must yield to superior court's interpretation of a statute. *In re Maxwell*, 970 S.W.2d 70, 74 (Tex.App.—Houston [14th Dist.] 1998, no pet.). Nevertheless, where a superior court's opinion is related to a particular scenario or fact situation, it would be error for a trial court to impose the holding in a factually dissimilar case. Here, however, the *undisputed* facts are similar to those in *American Plant Food*.

In *American Plant Food*, the issue presented to the court was whether a stagnant drainage ditch that flowed only intermittently was part of the "water in the state." The Court of Criminal Appeals held the statute "makes no distinction between perennial and intermittent streams."

*American Plant Food,* 587 S.W.2d at 682. Thus, "drainage ditch water is one of the types of surface water the Legislature sought to protect." *Id.* Here, appellant testified at trial that the drainage ditch at issue "drains the whole area on up past that warehouse and it drains more since they put that little road up there." Accordingly, we find no error in a trial court taking judicial notice of a superior court's interpretation of a statute. Appellant's second issue is overruled.

In his third issue, appellant asserts *American Plant Foods* is no longer applicable because the statute has since been amended. The relevant portion of section 26.001, however, remains unchanged since it was last interpreted in *American Plant Food. See* TEX. WATER CODE ANN. § 26.001(5) (Vernon 2000). We overrule appellant's third issue.

■■■■■ Appellant's fourth issue asserts that the trial court's charge impermissibly commented on the weight of the evidence. It is axiomatic that a trial court is prohibited from expressing an opinion about, or commenting upon, the weight of the evidence. *Taylor v. State,* 7 S.W.3d 732, 738–39 (Tex.App.—Houston [14th Dist.] 1999, no pet.). The trial court's charge tracked the applicable statute and its interpretation by *American Plant Food.* The trial court's inclusion of a drainage ditch within the statutory definition of "water within the state" was an accurate statement of the law and was not a comment on the weight of the evidence. We overrule appellant's fourth issue.

■■■■ Appellant's fifth issue avers that the trial court impermissibly expanded the statutory definition of water in the state by including a drainage ditch within the scope of the statute. As previously stated, a drainage ditch is a watercourse that falls within the Water Code's statutory definition of "water in the state." *American*

*Plant Food Corp.,* 587 S.W.2d at 682. Accordingly, we overrule appellant's fifth issue.

■■■■ Appellant's sixth, seventh, and eighth issues contend that the evidence was factually insufficient to support appellant's conviction. When reviewing factual sufficiency challenges, we must conduct a neutral review of the evidence. *Johnson v. State,* 23 S.W.3d 1, 6–7 (Tex.Crim.App. 2000). We may only set aside the verdict if (1) the evidence is so obviously weak that it undermines our confidence in the jury's determination, or (2) the evidence of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* at 10–11. We must be appropriately deferential to the fact finder's determinations of the credibility of the witnesses and the weight given their testimony, and we should only nullify the fact finder's factual determination when the finding is against the great weight and preponderance of the evidence. *Clewis,* 922 S.W.2d at 135.

■■■■ Appellant contends in his sixth issue that the evidence is factually insufficient to support the jury's finding that appellant intentionally or knowingly caused or allowed the discharge of sewage. The statute requires the State to establish that appellant intentionally or knowingly, with respect to his conduct, discharged or allowed the discharge of a waste or a pollutant. TEX. WATER CODE ANN. § 7.145 (Vernon 2000). Appellant asserts he did not cause or allow the discharge. Instead, he claims the evidence establishes that he merely failed to timely clean-up an unavoidable discharge. Witnesses for the State testified that they repeatedly informed appellant of the sewage problem, but, according to their testimony, appellant ignored their requests that he abate the nuisance on his property. The State's witnesses also testified that they observed a

pipe discharging sewage directly onto the ground. This testimony provides a factually sufficient basis for the jury to determine that appellant intentionally or knowingly caused or allowed the discharge of a waste or pollutant on his property. We overrule appellant's sixth issue.

Appellant's seventh issue asserts that the evidence was factually insufficient to support the jury's determination that the discharge of sewage was into or adjacent to any water in the state. The statute places the burden upon the State to establish that appellant discharged or allowed the discharge of a waste or pollutant into or adjacent to water in the state. *Id.* On appeal, appellant contends that it defies common sense to "stretch" the term "adjacent" to include a sewage overflow fifty yards away from the nearest water. The fact finder rejected the same argument forwarded by appellant at trial. The term adjacent is not defined by the Water Code. Accordingly, we must afford the term its plain, ordinary meaning unless the statute is ambiguous or would lead to absurd results. *Lane v. State,* 933 S.W.2d 504, 514 (Tex.Crim.App.1996). "Adjacent" means "not distant or far off"; "nearby but not touching." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 26 (1993). Being appropriately deferential to the factfinder's determinations, we conclude that the discharge of sewage within one hundred and fifty feet of water in the state falls within the plain, ordinary meaning of the term "adjacent" and is sufficient evidence to support the jury's determination that appellant discharged a waste or a pollutant into or adjacent to water in the state. Furthermore, Sgt. Ruland testified there was a trench that carried sewage away from the trailers and that he saw discharge in the "ditch area." We overrule appellant's seventh issue.

Appellant's eighth issue contends that the evidence is factually insufficient to support the jury's determination that a drainage ditch was within the statutory definition of "water in the state." In this issue appellant claims, absent a citation to the record, that the evidence at trial establishes that the drainage ditch is dry and overgrown with grass and that there is no testimony that the drainage ditch ever contained water. This statement is contrary to appellant's testimony at trial. Appellant testified at trial that the ditch "drains the whole area on up past that warehouse and it drains more since they put that little road up there." In the same issue, appellant asserts that the legislature clearly intended to exclude a ditch from the definition of water. As previously stated, we are controlled by the Court of Criminal Appeals' analysis in *American Plant Food,* 587 S.W.2d 679 (Tex.Crim.App.1979). Accordingly, we overrule appellant's eighth issue.

In his final issue appellant asserts that section 7.145 of the Water Code is unconstitutionally vague and impermissibly broad in its use of the term "adjacent to." Appellant contends the statute failed to give him notice as to what conduct was prohibited. Thus, we must determine whether appellant, as an ordinary person, received sufficient information from the statute to understand exactly what conduct is prohibited so that he could act in a lawful manner. *Weyandt v. State,* 35 S.W.3d 144, 155 (Tex.App.—Houston [14th Dist.] 2000, no pet. h.). "A statutory provision need not be cast in terms that are mathematically precise; it need only give fair warning of the conduct proscribed and provide guidelines for law enforcement." *Id.* A statute is not unconstitutionally vague simply because words or terms are not specifically defined. *Id.* Undefined words are given their plain meaning unless

the statute clearly shows they were intended to be construed in another sense.  *Id.* "Adjacent" is a simple word with a plain meaning that clearly conveys to the public the legislature's intent to criminalize the discharge of a waste or a pollutant into or near water in the state.  We overrule appellant's ninth issue.

The judgment of the trial court is affirmed.