Reversed and Remanded; Rehearing Overruled; Corrected Majority Opinion
on Rehearing After Remand of April 29, 2004; Withdrawn and Substituted with
Corrected Majority Opinion on Rehearing After Remand filed July 1, 2004












 
 
 
 
 
 
 
 
 
 
 
 
 
  
 


Reversed and Remanded;
Rehearing Overruled; Corrected Majority Opinion on Rehearing After Remand of
April 29, 2004; Withdrawn and Substituted with Corrected Majority Opinion on
Rehearing After Remand filed July 1, 2004.

 

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-99-00811-CR

____________

 

JOHN WATTS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 15

Harris County, Texas

Trial Court Cause No. 99-08037

 



 

C O R R E C T E D   C O N C U R R I N G   O P I N I O N  


O N   R E H E A R I N G   A F T E R  
R E M A N D

 

I
respectfully concur in the court=s judgment, but I write separately to
address the trial court=s instruction to the jury that a ditch itself is Awater in the state.@








The
majority concludes the trial court=s instruction, although
inappropriate, was entirely accurate.  A
review of the statutory definition of Awater in the state@ and an analysis of parts of the
Texas Water Code using the word Aditch@ suggest otherwise. Though  many ditches may fall within the definition
of Awater in the state,@ all ditches do not, as a matter of
law, constitute Awater in the state.@ 
The majority is correct in noting that the definition of Awater in the state@ includes not only water, but the
beds and banks of all watercourses and bodies of surface water.  See Tex.
Water Code Ann. ' 26.001(5) (Vernon Supp. 2004).  However, this definition still presupposes
that water is in some way present, whether it be constant or intermittent,[1]
so that the beds and banks still pertain to Awatercourses@ or Abodies of surface water.@ 
Indeed, the definition on which the majority relies describes a
watercourse as any Abody of water flowing . . . with bed and banks.@ 
Black=s Law
Dictionary 1585 (7th ed.
1999) (emphasis added).  Under this
definition, the bed and banks are part of an existing body of water but are not
themselves Awater.@








Notably,
although the Texas Legislature refrained from using the word Aditch@ when defining Awater in the state,@ it included the word in many other
sections of the Water Code.  In several
of these sections, the legislature used Awatercourse@ and Aditch@ separately.  See, e.g., Tex. Water Code Ann. ' 36.001(8)(E) (Vernon 2000) (defining
Awaste@ as, among other things, Awilfully or negligently causing,
suffering, or allowing groundwater to escape into any river, creek, natural watercourse,
depression, lake, reservoir, drain, sewer, street, highway, road, or road ditch . . .@) (emphasis added); Tex. Water Code Ann. ' 56.128
(2002) (describing injury to a drainage canal or ditch as A[a]ny person who wilfully fills up,
cuts, injures, destroys, or impairs the usefulness of any canal, drain, ditch,
watercourse . . .@) (emphasis added); Tex.
Water Code Ann. ' 56.242(d) (2002) (stating that A[t]he board may issue negotiable
notes to pay any lawful expenditure of the district, other than principal and
interest on debt, including all costs to improve or repair any existing
drainage, canal, ditch, watercourse . . .@) (emphasis added).  The legislature=s separate use of the words Awatercourse@ and Aditch@ in these sections suggests that the
latter is not necessarily always included in the definition of the former.  See City of San Antonio v. Boerne, 111
S.W.3d 22, 25 (Tex. 2003) (stating that courts interpret a statute so as to
give effect to every part thereof).  If
the legislature intended to include Aditch@ in the definition of Awater in the state,@ it could have inserted the word
quite easily as it did in these and other instances.

For example,
the legislature used the word Aditch@ in the Water Code=s definition of Apoint source.@ 
See Tex. Water Code Ann. ' 26.001(21) (Vernon 2000).  A Apoint source@ is defined as Aany discernible, confined and
discrete conveyance, including but not limited to any . . . ditch . . .
.@ 
Id. (Emphasis added.)  APoint source@ and Awater in the state@ are later used in section 26.121 to
describe unauthorized discharges.  That
section states: AExcept as authorized by the commission, no person may
discharge any pollutant, sewage, municipal waste, recreational waste,
agricultural waste, or industrial waste from any point source into any water
in the state.@  Tex. Water Code Ann. ' 26.121(d) (emphasis added).  The language in this section, coupled with
the foregoing definitions for these terms, suggests that a Apoint source@ allows a contaminant to flow into Awater in the state.@ 
It does not support the notion that a Apoint source@ is itself Awater in the state.@ 
Because the Texas Legislature did not include Aditch@ in the definition of Awater in the state,@ it is logical to conclude that all
ditches do not necessarily fall under this definition, only those that
otherwise come within the language of the definition.








Moreover,
as the Court of Criminal Appeals has noted, the trial court=s oral instruction to the jury did
not accurately describe the situation in American Plant Food Corporation v.
State.  See Watts v. State, 99 S.W.3d
604, 614 n.26 (Tex. Crim. App. 2003).  In
American Plant Food, the Court of Criminal Appeals found that Adrainage ditch water@ was a type of surface water
contemplated by the legislature under the section of the Water Code in effect
at that time.  American Plant Food
Corp. v. State, 587 S.W.2d 679, 682 (Tex. Crim. App. 1979).  Here, the trial court, perhaps inadvertently
as suggested by the Court of Criminal Appeals, omitted the word Awater@ and instructed the jury that the
drainage ditch itself was a type of surface water protected under the Water
Code Act.  This error was then reenforced
by the State during its closing argument when the prosecutor told the jury: AAnd judicial notice of the fact that
another Court, a hirer [sic] Court, the highest Court in Texas has held that
drainage ditches are entitled to the protection of this statute.  I think that=s pretty clear.@[2] 
The State
emphasized it again when the prosecutor stated, A[Y]ou know that now a drainage
ditch in cases can be accepted as a water in the State.@[3] The jury should have been free to
read the undefined terms in the definition of Awater in the state@ to have any meaning acceptable in
common parlance.  See Vernon v. State,
841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (stating that jurors are free to
read undefined statutory terms to have any meaning acceptable in common
parlance).  But, the jury may have
interpreted the trial court=s comments as an indication that all dry ditches are Awater in the state@ as a matter of law, even though the
court=s charge and the Water Code do not
say this.[4]  The State=s reinforcement of this notion in its
closing argument could only have exacerbated the trial court=s misstatement.








Appellant had a right to a jury
verdict based on the jury=s determination of the meaning of the undefined statutory
terms, in accordance with common parlance and understanding.  See Vernon, 841 S.W.2d at 409.  This court cannot conclude beyond a
reasonable doubt that the trial court=s inaccurate characterization of the
holding in American Plant Food did not contribute to appellant=s conviction.  For this reason, we must find the error
harmful and reverse the trial court=s judgment.

 

 

 

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Corrected Majority and
Concurring Opinions on Rehearing after Remand filed July 1, 2004.

Panel consists of Justices Yates, Hudson, and Frost.  (Frost, J., concurring).

Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  The
hypothetical presented in the last paragraph of footnote 6 of the majority
opinion presupposes that water is in some way present.  Therefore, the hypothetical ditch would
qualify as a Awatercourse@ and the
hypothetical dumper could not act with impunity.





[2]  Emphasis
added.





[3]  Emphasis
added. 





[4]  Moreover,
although every dry ditch has the potential to become a Awatercourse@ and
thus Awater in the state,@ a dry
ditch is not per se a Awatercourse.@