**MASON FEED STORE et al., Appellants,**

v.

**Mrs. James W. STARKS et al., Appellees.**

No. 11349.

Court of Civil Appeals of Texas.

Austin.

Jan. 5, 1966.

Rehearing Denied Jan. 26, 1966.

Blanks, Thigpin, Logan, Steib & Lewis, S. Ancial Middlebrook, San Angelo, for appellants.

Harold Schmidt, Mason, Brown, Sparks & Erwin, Will Barber, Byrd, Davis & Eisenberg, Tom H. Davis, Austin, King, Willoughby, Dickenson & Batjer, C. R. Dickenson, Abilene, for appellees.

PHILLIPS, Justice.

This is a venue case involving the action of the court in respect to the various pleas hereinafter described. James W. Starks was killed in McCulloch County, Texas, in January of 1964 when a truck owned by Mason Warehouse Association, Inc., and driven by Starks was struck from the rear by a truck owned and operated by W. J. Briley.

As a result of this collision, suit was filed in the District Court of McCulloch County by the deceased's widow, Mrs. Starks, against the Mason Feed Store, W. J. Briley and his brother Homer Briley, Jr. The Mason Warehouse Association, Inc. intervened in the suit to recover for property damage to its truck and trailer.

In the trial court, Mrs. Starks was plaintiff, Mason Warehouse Association, Inc. was intervenor, and the Mason Feed Store, W. J. Briley and his brother Homer Briley, Jr. were defendants.

All defendants filed pleas of privilege. At a hearing held thereon, the pleas of Mason Feed Store and W. J. Briley were overruled and the plea of Homer Briley, Jr. was sustained.

Mason Feed Store perfected its appeal from the overruling of its plea. Mrs. Starks and the intervenor excepted to the court's ruling insofar as it sustained the plea of Homer Briley, Jr., and perfected their appeal.

No appeal has been taken from the court's action in overruling the plea of W. J. Briley and such action is therefore final.

We affirm the judgment of the trial court.

The Mason Feed Store is a partnership comprised of Victor Lehmberg and Marvin McMillan, Jr. and has its principal place of business in Mason County. On and prior to January, 1964, it had executed a grain handler's agreement with the U. S. Department of Agriculture Commodity Credit Corporation. Under this agreement it was to receive grain from the CCC, store it and issue it on purchase orders that had been secured from the Agricultural Stabilization Committee in Mason. This grain was owned by the CCC and stored with The Continental Grain Company in Brownwood, Texas.

Since Mason Feed Store had two trucks and a Railroad Commission carrier permit to haul grain, it made successive, separate oral agreements with the CCC to haul the grain from the Continental Grain Company at Brownwood to the Mason Feed Store in Mason, Texas. The specific contract involved here was for the hauling of two million pounds of milo between December 31, 1963 and January 30, 1964.

Under the Mason Feed Store's hauling agreement with the CCC, it was its obligation and responsibility to pick up the grain at Brownwood and haul it to Mason on its trucks under its carrier permit. This grain was released by the Continental Grain Company to the Mason Feed Store on authority from the CCC. When the Mason Feed Store picked up a load of grain at Brownwood, a truck bill of lading was executed, copies of which were given to the driver, which were, in turn, delivered by him to the Mason Feed Store.

On a Saturday preceding the collision in which Mr. Starks was killed, the Mason Feed Store made an agreement with Homer Briley, Jr. to haul as many loads of milo from Brownwood to Mason as he could by

the following Wednesday. For this, he was to be paid 10 cents per hundred pounds by Mason Feed Store. This was the same grain that Mason Feed Store was obligated to haul under its agreement with the CCC.

Since Homer Briley, Jr. owned several trucks and trailers, the Mason Feed Store asked him to haul as many loads of grain for them as he could. No specific number of loads were mentioned and Homer Briley testified that under the agreement he was free to haul as many loads as he could or none at all.

This hauling arrangement was made directly with Homer Briley, Jr., and the Mason Feed Store expected him to do the hauling on his trucks with his drivers.

Neither Homer Briley, Jr. nor W. J. Briley had a Railroad Commission Permit authorizing them to carry the grain.

Two loads were hauled by virtue of this agreement, however neither were hauled by Homer Briley, Jr. One was hauled by H. D. Poe, whom Homer Briley, Jr. described as a farmer who does a little trucking, and the other load was hauled by W. J. Briley, Homer Briley, Jr.'s brother. Homer Briley, Jr. testified that the check he received from Mason Feed Company was made payable to H. D. Poe and that he turned the entire amount over to H. D. Poe. He testified further that had he been paid for W. J. Briley's load, he would have likewise turned over the entire amount to W. J. As to any agreement he might have had with W. J. Briley, Homer Briley, Jr. testified that he "just told him they had the grain to haul and that they were needing somebody to help them, and if they got done unloading down here early enough, to go back up there to load a load if he wanted to do it. In other words, I didn't say he had to go or nothing."

On January 20, 1964, W. J. Briley picked up a load of CCC grain from the Continental Grain Company in Brownwood to be hauled to the Mason Feed Store under its hauling contract with the CCC and its

subsequent hauling agreement with Homer Briley, Jr. Upon receiving this grain, W. J. Briley executed a bill of lading which listed the shipper as the Continental Grain Company, and the carrier as Mason Feed Store. W. J. Briley signed the bill as Mason Feed Store's "authorized representative."

While enroute to deliver this grain to the Mason Feed Store, W. J. Briley collided with the truck being driven by James W. Starks and Starks was killed.

After the collision, the Mason Feed Store had the grain picked up at the scene of the accident and brought to their store in Mason. A copy of the bill of lading, which had been executed by W. J. Briley when he picked up the grain in Brownwood, was sent by the Mason Feed Store to the CCC office in Kansas City for payment. Upon that bill of lading, Mason Feed Store was paid by the CCC for the delivery of the load of grain.

Mason Feed Store is before this Court on one point of error, being that of the trial court in refusing to sustain their plea of privilege inasmuch as there are no facts sufficient to establish venue in McCulloch County, Texas.

We overrule this point.

■ The trial court made no findings of fact consequently, we will view the necessary venue facts raised by the pleadings and evidence most favorable to appellees. See this Court's opinion in Ball v. Martin, 277 S.W.2d 182.

Article 911b, Vernon's Ann.Civil Statutes is a comprehensive act requiring, in part, that one who hauls for hire over the highways of this State between incorporated cities must have a permit from the Railroad Commission. Mason Feed Store had such a permit, however neither of the Briley Brothers had one. There is no question but that a permit was necessary for a carrier to haul grain under the facts of this case. The record discloses that both Brileys knew this.

Article 1690b, Vernon's Ann.Penal Code of Texas, provides in part as follows:

"(a) Every * * * person who violates or fails to comply with or procures, aids or abets in the violation of any provision of this Act [Art. 911b] * * * shall be guilty of a misdemeanor * * *."

By procuring Homer Briley, Jr. and through him, W. J. Briley to carry a load of CCC grain from Brownwood to Mason for the Mason Feed Store, neither of whom had a Railroad Commission permit, Mason Feed Store procured, aided and abetted in the violation of Art. 911b, within the meaning of Art. 1690b of the Vernon's Ann.Penal Code and by reason thereof Mason Feed Store was guilty of negligence per se. See Mundy v. Pirie-Slaughter Motor Company, 146 Tex. 314, 206 S.W. 2d 587. We hold that the further requirements of Pirie have been fulfilled in that there is sufficient evidence of negligence on the part of W. J. Briley in operating his truck at the time of the accident. In addition, while the record is silent as to whether Mason Feed Store, Inc. knew that W. J. Briley did not have a permit to haul grain, there is sufficient evidence to indicate that it was negligent in not ascertaining this fact.

Had there been any question of the fact that Mason Feed Store procured W. J. Briley (testimony of a witness for the Mason Feed Store was that none of the partners had talked to W. J. Briley, but that W. J. Briley had talked to some unidentified employee of the store) Mason Feed Store ratified W. J. Briley's agency when they forwarded the bill of lading Briley had signed to the CCC in St. Louis for payment.

Art. 1995 V.A.C.S., provides, in part, as follows:

"No person who is an inhabitant of this State shall be sued out of the county in which he has his domicile except in the following cases:

* * * * * *

9a. Negligence.—A suit based upon negligence per se, negligence at common law or any form of negligence, active or passive, may be brought in the county where the act or omission of negligence occurred or in the county where the defendant has his domicile. The venue facts necessary for plaintiff to establish by the preponderance of the evidence to sustain venue in a county other than the county of defendant's residence are:

1. That an act or omission of negligence occurred in the county where suit was filed.

2. That such act or omission was that of the defendant, in person, or that of his servant, agent or representative acting within the scope of his employment.

3. That such negligence was a proximate cause of plaintiff's injuries."

The court having found that the negligence of Briley occurred in McCulloch County, that the Mason Feed Store was negligent as a matter of law under the rule of Pirie above, we have no difficulty with requirement number 2 of Sec. 9a of Art. 1995 in that, while the record is largely silent as to the actual controls that Mason Feed Store exercised over W. J. Briley, there is sufficient evidence to indicate that he had the right of control necessary to establish a relationship with Briley as that of servant, agent or representative acting within the scope of his employment. See Newspapers, Inc. v. Love et al., 380 S.W.2d 582, Sup.Ct.

There is also a line of cases in this State holding that a person with Railroad Commission carrier permit cannot delegate the rights and responsibilities conferred by such permit to others and thereby release himself from liability for the negligence of such persons. Wardlow v. New-

berry, Tex.Civ.App., 319 S.W.2d 437; Berry v. Golden Light Coffee Company, 160 Tex. 128, 327 S.W.2d 436. This rule has been applied to those delegating their rights under such a permit to an independent contractor. Davis v. Employers Casualty Co., Tex.Civ.App., 214 S.W.2d 642. This rule was developed as public policy required a rigorous policing of the public highways and the commercial traffic thereon which policing, in turn, requires strict vigilance of the interrelation of those carriers holding permits with those who do not. Consequently, under the rule of the Wardlow, Golden Light and Davis cases, Mason Feed Store is placed in the position of the defendant in person under Section 9a, Article 1995, V.A.C.S. whose negligence proximately caused the accident in question.

Mason Feed Store has urged the rule of law upon this Court stated in McCombs v. Stewart, Tex.Civ.App., 117 S.W.2d 869, and that in Linden Lumber Co. v. Johnston, Tex.Civ.App., 128 S.W.2d 121, writ dism. Here the shippers of cattle and lumber, respectively, were not held liable for the torts of the carriers they employed who were overweight in the former and without a permit and also overweight in the latter. These cases are not in point here as in each the shipper owned the cattle and the lumber shipped. The Motor Carrier Act does not require a person to have a carrier permit to transport his own goods. Consequently, any negligent acts of the carriers in McCombs and Linden were those of independent contractors not attributable to the shippers. This is not the case here. Under its contract with the Commodity Credit Corporation, the relationship of the Mason Feed Store was that of carrier and not owner with the resulting liability for an attempt to delegate its authority. W. J. Briley was hauling such grain for the Mason Feed Store, at the time of the accident under its hauling contract with CCC, and Mason Feed Store was paid by the CCC for the haul.

■ Mason Feed Store further contends that since the accident occurred on the public highway between Brady and Mason the second incorporated town had not been reached, consequently W. J. Briley did not need a carrier permit to haul the grain, citing Article 911b, V.A.C.S. We overrule this contention. Art. 911b requires a permit in such cases where a highway between two or more incorporated cities has been traversed. See State v. Acel Delivery Service, Inc., 388 S.W.2d 930, Sup.Ct.

As stated above, Mrs. Starks is an appellant here as well as an appellee. She presents three points of error being that of the trial court in sustaining the plea of privilege of Homer Briley, Jr. on the theory that he was acting as the agent of the Mason Feed Store and that as a matter of public policy he was responsible for the negligence of W. J. Briley; that he was the party to a conspiracy to procure the hauling of grain in violation of Article 911b; that he was guilty of negligence per se in violating Art. 1690b of the Vernon's Ann.Penal Code in that he aided and abetted the hauling of grain in violation of Article 911b which by the negligent acts of W. J. Briley became as a matter of law the proximate cause of the collision in question.

We overrule these points.

Subdivision 2 of Section 9a of Article 1995 set out above requires that the act or omission in question be that of the defendant, in person, or that of his servant, agent or representative acting within the scope of his employment.

■ Homer Briley, Jr. does not qualify under this provision as either the agent of Mason Feed Store or of W. J. Briley. Homer Briley, Jr. was asked by Mason Feed Store if he could help them by hauling grain from Brownwood to Mason. There was no agreement on the amount or the number of loads. He was not bound or obligated to haul any grain for Mason Feed Store. The two trucks he owned were unavailable to haul the grain and

when he saw his brother W. J. Briley, he told him that the Mason Feed Store had grain to haul, that they needed help, that if he wanted to haul some of it he could. The Briley brothers did not operate as partners or divide profits. Homer Briley, Jr. did not plan to make and did not make any profit on the transaction in question. The bill of lading on the load of grain which was involved in the collision shows the carrier to be Mason Feed Store. The bill of lading was signed by W. J. Briley as authorized representative of the carrier. Homer Briley, Jr. at most, was merely a conduit for the information that grain could be hauled for Mason Feed Store. These facts do not establish the necessary agency under the statute or place Homer Briley, Jr. in the position of an illegal carrier under Wardlow and its companion cases.

We affirm the judgment of the trial court.