**UNITED STATES of America,**
**Plaintiff,**

**v.**

**J & J TRUCK LEASING, INC. and Lady Baltimore Foods, Inc., Defendants.**

**Cr. T–CR–860.**

United States District Court
D. Kansas.

Aug. 24, 1966.

Newell A. George, U. S. Atty., Kansas City, Kan., Harry F. Horak, Regional Atty., Bureau of Enforcement—Interstate Commerce Commission, for plaintiff.

Thomas W. VanDyke, Kansas City, Mo., and Wayne Hundley, Topeka, Kan., for Lady Baltimore Foods, Inc.

MEMORANDUM OF DECISION

TEMPLAR, District Judge.

On January 28, 1966, the United States Attorney filed in this Court an Information containing 20 Counts in each of which defendant J & J Truck Leasing, Inc., hereafter referred to as "J & J" did engage in for hire transportation of property by motor vehicle in interstate commerce and did transport goods by motor vehicle on the public highways in interstate commerce for compensation without there being in force a certificate or permit issued by the I.C.C. to the J & J authorizing such transportation, and further charging that Lady Baltimore Foods, Inc., hereafter referred to as

"Lady B" did knowingly and wilfully aid and abet J & J in the commission of the offense.

Defendant J & J entered a plea of guilty to 10 Counts of the Information and the remaining 10 Counts were dismissed as to J & J on motion of the government.

Defendant Lady B filed a motion to dismiss the charges in each Count charging it with being an aider and abettor. The grounds alleged in Lady B's motion were:

1.  Under the evidence to be stipulated Lady B did not conspire with J & J to violate Sections 303(c) and 322 (a) of Title 49 U.S.C., nor did it in fact, aid, abet, counsel, command, induce or procure any such violation.

2.  One of the principal purposes of the statute under which J & J is charged is the protection of shippers or consignees from abuses by carriers. Violations of Sections 303(c) and 322(a) by a carrier necessarily contemplates participation by a shipper or consignee. Thus, mere participation by a member of the protected class, without more, does not constitute such person an aider or abettor.

Thereafter, the plaintiff and defendant Lady B entered into a stipulation of facts to be used in considering the motion to dismiss and for that purpose only. The parties have filed briefs in support of their respective contentions and the motion has been argued and submitted to the Court on the Information, the Stipulation of Facts, the Briefs and arguments of the parties. The defendant Lady B contends essentially that under the facts as stipulated it must be determined that it did not conspire with or, in fact, aid and abet J & J in the violations charged, and that under the circumstances existing, it cannot be charged as an aider and abettor of any of the offenses alleged under the terms of 49 U.S.C. § 303(c).

█ On a motion to dismiss an Information, the Court is required to consider that the facts alleged are admitted to be true for purposes of determining whether a violation is charged. Stephens v. United States, D.C., 85 F.Supp. 620, 625.

An examination of the charges in the 20 Counts, all in substantially the same form, convinces this Court that the Information is legally sufficient. The objection raised by Lady B is based on the contention that it was a shipper on J & J trucks and the statute was passed by Congress, not to punish shippers who are members of the class designed to be protected from the operation of illegal carriers and therefore Lady B as a shipper could not participate in the unlawful operation as an aider or abettor to such activity.

The further contention is that under the stipulated facts it is clear that Lady B did not aid or abet J & J to violate § 303 (c) and § 322(a) of Title 49.

Briefly summarized the stipulation of facts disclose that Lady B did employ J & J to transport in interstate commerce canned goods, a non-exempt commodity, and that twenty different shipments were made from July 1964 to June 1965. The vehicles and drivers of J & J were in the service of J & J; J & J held no permit from I.C.C., Lady B paid compensation to J & J as charged in the Information and no part was rebated; J & J is a corporation owning and operating approximately fifteen tractors and fifteen trailers, having a maximum capacity of approximately 40,000 pounds; the J & J transported canned goods for other wholesale grocers in the Kansas City area, and that J & J first contacted Lady B and offered to transport its canned goods from California to Kansas should occasion arise; that Lady B through an employee, telephoned J & J and arranged for each shipment described in the Information; attached to the stipulation are copies of 25 documents offered by the government in support of Count 2 of the Information. These documents depict the entire round trip of J & J's vehicle and drivers wherein the return trip involved transportation as alleged in Count 2. A list of instructions given by J & J to its drivers is in-

cluded. A trip report showing revenues accruing is attached together with disbursements of the revenues. An invoice for truck rental issued by J & J to Wilsey Bennett Company on the westbound portion of the trip is included and the payroll record of J & J for the drivers on the round trip. Included is a statement or invoice for truck rental issued by J & J to Lady B for the eastbound shipment, together with Lady B's voucher which covered that invoice. Included are manifests issued by Frank M. Wilson Company of Stockton, California to Lady B describing the commodities embraced in the eastbound shipment. Daily logs of the drivers are included.

It was further stipulated that documents of a similar type and character as those described above would be offered in support of plaintiff's case as to Counts 1 and 3 through 20. There was also attached to the stipulation correspondence, forms and memorandum concerning Lady B and its participation in a leasing arrangement during 1963 with Associated Leasing Company of Independence, Missouri, owned and operated by a Mr. Squires. Lady B had been notified that their leasing arrangement with Squires was unauthorized insofar as interstate commerce was concerned, and such relation was terminated following the date on which Lady B through its agents and officers learned of the illegality of its arrangement with Squires. J & J was responsible for and did control, supervise and direct all of the transportation operations. Lady B did not. There was no written vehicle lease or rental arrangement entered into between J & J and Lady B. For transporting merchandise from California to Kansas City and Wichita, the charge was $1.45 per hundred pounds. This rate was paid by Lady B to J & J. The rail rate on a shipment of canned goods from California to Kansas City or Wichita with a minimum of 40,000 pounds was $1.73 per hundred pounds, and the motor carrier rate of the same commodity between the same points with a minimum of 40,000 pounds was $2.02 per one hundred pounds. Lady B

when using rail services shipped only minimum quantities of 75,000 or 100,000 pounds, for which the transportation rates were $1.48 and $1.33 respectively on these volumes. On some commodities lower rates were assessed as reflected by the freight bills attached to the stipulation. Certified motor common carrier service was never used between the points here involved by the defendant Lady B. The president of Lady B stated to the commission investigator that defendant J & J handled these shipments in the same manner as would have been done by an authorized motor carrier. Defendant Lady B had no stock interest in J & J and did not have or exercise control in any way over the conduct of defendant J & J's business affairs.

Under these facts and circumstances as stipulated, defendant Lady B places its reliance for its contention on the law set out in the case of United States v. Williamson, D.C., 235 F.Supp. 836, a decision which, it is asserted by Lady B, is based on facts identical with those in the case at bar.

In that case a stipulation of facts was filed which stated substantially that defendant Williamson owned a number of refrigerated trucks which were used to carry food products in interstate commerce from Laredo, Texas and various other points. Intercontinental engaged in the purchase and sale of meat and meat by-products throughout the United States and employed carriers to transport its meat in interstate commerce. Williamson approached Intercontinental offering to transport its meat in interstate commerce although he had no authority from the Interstate Commerce Commission for such carriage. With knowledge that Williamson had no such authority, Intercontinental nevertheless employed Williamson to carry certain of its products in interstate commerce, being motivated apparently, by a want of certified carriers serving this area. The relationship of these parties was solely that of shipper-carrier and Intercontinental had no interest or control over Williamson's trucks, nor did it induce or

encourage Williamson to ship goods in interstate commerce without authority, that is, unless this patronage of his illegal activities constituted such inducement. The Court in the *Williamson* opinion further noted that there was no evidence that the charges of such transportation paid by Intercontinental were other than the usual and normal tariff charges for like transportation by duly authorized carriers. No rebates, concessions, or "kick-backs" were involved.

While the opinion in *Williamson* does not state all the stipulated facts, the trial court did find that there was no evidence that the charges of the transportation paid by the shipper were other than the usual and normal tariff charged for like transportation by duly authorized carriers, and that no rebates, concessions or "kick-backs" were involved. This fact was important to the court in the *Williamson* case, and this is demonstrated by the fact that in the conclusion of the opinion, 235 F.Supp. page 838–839, it is stated:

"[I]t should be made clear that the foregoing should not be construed as holding that a shipper, or other person, may not conspire with a carrier to violate § 303(c); or that a shipper, or other person, may not be guilty as an aider or abettor if, in fact, he 'aids, abets, counsels, commands, induces or procures' the violation. The holding simply is that the knowing shipment of his goods by a shipper, and the payment of the proper tariff, does not constitute such shipper an aider or abettor. Such conduct merely makes it possible for the carrier to violate the law."

Since the Information clearly charges Lady B in the various Counts with aiding and abetting J & J in committing a misdemeanor, the Court must now determine whether it should sustain the motion on the ground that though Lady B knowingly participated in committing the offense, still it is a member of the protected class for whose benefit the law was passed, and for this reason cannot be constituted and charged as an aider and abettor.

The Court is aware that a rule developed by which the purchaser of liquor and a woman transported in interstate commerce, in absence of any other facts on their part were held not subject to prosecution as aiders and abettors. But we believe the law is otherwise here. The annotations found at 131 A.L.R. 1322 supplementing 5 A.L.R. 782 and 74 A.L.R. 1111 contain a multitude of citations to cases which hold that although there are some offenses which are so defined by statute or the common law that they may be committed only by certain persons or classes of persons; nevertheless, a person not within the class of those by whom the crime may be directly perpetrated, may by aiding and abetting a person who is within the scope of the definition, render himself criminally liable. And in this connection see, for example, cases where a passenger in an automobile may be charged as an aider and abettor to one charged with driving while drunk, Annot. 47 A.L.R.2d 570. Likewise a passenger may be charged with aiding and abetting a "hit and run" driver. 62 A.L.R.2d 1130. The case before the Court here is neither a liquor case nor is it a prostitution case.

It has been held that a person not falling within the class described in a penal statute may nevertheless be charged provided (a) he was present actually or constructively and aided or abetted another person in the commission of the crime; (b) or, being absent, counseled or procured or caused that person to commit the crime; (c) or aided him after he had committed the offense. If the crime is a misdemeanor the aider or abettor in any one of the three cases above named may be a principal and should be charged as such. The crime in this case being a misdemeanor, the defendant is therefore properly charged as a principal with the offense of aiding and abetting in the commission of the crime denominated in the statute. United States v. Williams, 5 Cir., 159 F. 310.

Lady B urges the Court to follow the reasoning of *Williamson* and determine that the knowing participation by a vic-

tim (here Lady B) without more does not constitute such a person an aider and abettor. The Court in *Williamson* followed the rules adopted in Mann Act cases, where the transported woman, who did nothing more than agree to be transported, could not be held as an aider and abettor. Likewise the same rule was adopted in dealing with purchases of intoxicating liquor from a "bootlegger" in violation of prohibitory liquor laws; the purchaser, if he did no more than purchase the liquor could not be held as an aider and abettor.

So in *Williamson*, where the shipper did nothing more than patronize the unauthorized carrier, paying the customary and proper tariff, when a want of certified carriers existed in the area of the shipper's business, was held by the Court in that case not to be an aider and abettor.

But here, it is apparent that there was no want of certified carriers in the area from which Lady B desired to ship its merchandise. Nor is it so contended. That Lady B was able to have its merchandise carried at a cost considerably cheaper than it would have been required to pay an authorized carrier for shipment of the same kind, amount and character of goods seems clear, and that the arrangement made between J & J and Lady B was without regard to the requirements of the statute governing such transactions cannot be doubted.

Under the facts stipulated, the Court cannot believe that Lady B was unaware of the fact that it was receiving a reduced rate on the merchandise carried for it by J & J; nor can the Court overlook the fact that J & J billed Lady B for its charges, not as "freight charges" but as "truck rental", when at the time Lady B had been warned and had known that any rental arrangements with an unauthorized carrier would be a violation of law.

Following the statement of the law found in United States v. Gunn, D.C., 97 F.Supp. 476, where the transportation of canned goods of one processor by the unauthorized trucks of another was involved, it must be said that there is no doubt the defendant intended to do what it did do. Defendant Lady B knowingly entered into the arrangement with J & J and that concern was violating the law. Under such circumstances to permit Lady B to escape punishment would be against the policy of the law. The law treats a defendant as if it were cognizant of the things it did. That Lady B did not know that J & J was unauthorized offers no excuse, the act allegedly committed is made an offense irrespective of defendant's intention at the time, and any ignorance that the act would constitute an offense would be no defense.

Under the facts stipulated by the parties and the reasonable inferences that may be drawn therefrom, this Court cannot say in the first place that Lady B could not be held as an aider and abettor, and in the next place, the Court cannot say that there is no evidence from which a trier of facts could not find that Lady B did knowingly and wilfully participate as an aider and abettor in the violation of 49 U.S.C. § 303(c) and § 322(a) as charged in each of the 20 Counts of the Information.

From the facts stipulated this Court cannot say as a matter of law that Lady B did not in some way associate itself with the venture, and that it participated in it as in something it wished to bring about, and that it sought by its action to make the venture succeed. United States v. Peoni, 2 Cir., 100 F.2d 401, 402.

The motion of the defendant to dismiss, as to it, the charges contained in the Information must be denied and overruled.

It is so ordered.