STATE of Texas, Petitioner,

v.

HOUDAILLE INDUSTRIES, INC., d/b/a Houdaille-Duvall-Wright, Respondent.

No. C–581.

Supreme Court of Texas.

May 26, 1982.

Mark White, Atty. Gen., James R. Meyers and Jose Manuel Rangel, Asst. Attys. Gen., Austin, for petitioner.

Susman & McGowan, Robert A. Rowland, III, Susan A. Ohsfeldt, Houston, for respondent.

POPE, Justice.

The question presented is whether the State of Texas, in a suit to recover civil penalties authorized by section 16(b) of article 911b,[1] the Motor Carrier Act, had to allege and prove that the violation was done with knowledge or intent. The State sued Houdaille Industries, Inc., to recover civil penalties and for judgment permanently enjoining Houdaille from aiding and abetting the transportation of its products over Texas highways by an uncertificated carrier. The State alleged that Houdaille

---

1. All statutory references are to Tex.Rev.Civ. Stat.Ann. unless otherwise indicated.

on sixty-six separate occasions commencing on January 5, 1978, and continuing to November 20, 1978, had hired and paid L & L Trucking Company to transport concrete doors from its plant at Pearland, Texas, to other points in the state. The trial court sustained defendant's motion for summary judgment and the court of civil appeals affirmed the judgment. 617 S.W.2d 802. We reverse the judgments of the courts below.

L & L Trucking did not have a certificate of public convenience and necessity and, in a prior suit, had agreed to a judgment for penalties in the sum of $3,500 for its violations of the Motor Carrier Act, article 911b. The State then brought this suit against Houdaille, the shipper. The basis for granting Houdaille's motion for summary judgment was that the State did not allege that Houdaille, when placing the shipments with the uncertificated carrier, knowingly or intentionally promoted or assisted in the violation of article 911b.

■ Houdaille's attack upon the sufficiency of the State's pleadings should ordinarily have been by special exception, so that the State might have had an opportunity to amend its pleadings. *Texas Department of Corrections v. Herring*, 513 S.W.2d 6, 10 (Tex.1974). At the summary judgment hearing, however, the parties agreed in writing that, had the trial court sustained an exception prior to the motion for summary judgment and granted time for the State to amend and plead that Houdaille had knowledge and intent, the State would not have done so. This squarely posed the question before us now. The State's position is that it may impose penalties against one who procures, aids or abets the violation of the Motor Carrier Act without proof that the shipper knowingly or intentionally hired an uncertificated carrier. We agree with that contention.

We are here concerned only with section 16(b), the statute concerning penalties. Section 16(a) is also relevant, however, in that it aids in the construction of section 16(b). Sections 16(a) and 16(b) of article 911b provide:

(a) Every officer, agent, servant or employee of any corporation and every other person who violates or fails to comply with or procures, aids or abets in the violation of any provision of this Act or who violates or fails to obey, observe or comply with any lawful order, decision, rule or regulation, direction, demand, or requirement of the Commission shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than Twenty-Five Dollars ($25.00), nor more than Two Hundred Dollars ($200.00), and the violations occuring [sic] on each day shall each constitute a separate offense.

(b) Every officer, agent, servant or employee of any corporation and every other person who violates or fails to comply with or procures, aids or abets in the violation of any provision of this Act or who violates or fails to obey, observe or comply with any lawful order, decision, rule or regulation, direction, demand or requirement of the Commission shall in addition be subject to and shall pay a penalty not exceeding One Hundred Dollars ($100.00), for each and every day of such violation. Such penalty shall be recovered in any Court of competent jurisdiction in the county in which the violation occurs. Suit for such penalty or penalties shall be instituted and conducted by the Attorney General of the State of Texas, or by the County or District Attorney in the county in which the violation occurs, in the name of the State of Texas.

*Legislative History of Section 16(b)*

■ The legislative history of section 16(b) shows that the legislature did not intend to require knowledge or intent as elements of an action for penalty. The Motor Carrier Act was enacted in Texas by the Forty-First Legislature in 1929. *See* 1929 Tex.Gen.Laws, ch. 314, at 698–710. Sections 16(a) and 16(b) were substantially the same in the original act as they are today, except for provisions for greater fines and penalties. Section 16(a) provided

that violations were criminal misdemeanors; section 16(b) authorized civil penalties.[2]

Two years after the original enactment in 1931, the Forty-Second Legislature generally rewrote the Motor Carrier Act, making minor amendments to sections 16(a) and 16(b). *See* 1931 Tex.Gen.Laws, ch. 277, at 480–97. Those provisions have not been amended since 1931. Other revisions by the Forty-Second Legislature are very helpful in disclosing the legislature's intent. The same legislative act that enacted the amendments to section 16 also enacted section 6cc. Section 16 was silent about any requirement for knowledge or intent. Section 6cc, however, expressly required the prohibited action to be done knowingly. This is the amendment: [3]

No motor carrier operating in whole or in part in this State under certificate or permit issued by the Railroad Commission of Texas, or any officer or agent of such motor carrier, shall require or *knowingly* permit any truck driver or his helper drive or operate a truck for a period longer than fourteen (14) consecutive hours; and whenever such driver or helper shall have been continuously on such duty for fourteen (14) hours, he shall be relieved and shall not be required or *knowingly* permitted to again go on duty until he has had at least eight (8) consecutive hours off duty; and no such driver or helper who has been on such duty fourteen (14) hours in the aggregate in any twenty-four (24) hour period, shall be required or *knowingly* permitted to continue or again go on duty without having had at least eight (8) consecutive hours off duty; and venue for prosecution under this section shall lie in the county of the residence of the defendant; provided, that in cases of emergency caused by the act of God, the foregoing restrictions as to hours shall not apply.

1931 Tex.Gen.Laws, ch. 277, § 6cc, at 487 (emphasis added).

Continuously since 1931 section 6cc has prohibited a carrier's officer or agent from "knowingly" permitting drivers to operate a truck for more than the permitted hours and from "knowingly" permitting the driver to return to duty until he had been off duty for eight hours. The requirement of knowledge in section 6cc and its omission in section 16, when taken with the fact that the same Forty-Second Legislature enacted both sections of the act at the same session, demonstrates that the legislature required knowledge in the one instance but did not intend it in the other.

Additional reasons support this conclusion. After the Forty-First Legislature enacted section 16 in 1929, Vernon Law Book Company, in compiling the statutes, separated section 16 from all the other sections of article 911b and compiled it as article 1690b of Vernon's Annotated Penal Code. This transfer from the civil statutes to the penal code included section 16(b), the civil penalty provision.

---

2. Sec. 16. (a) Every officer, agent, servant or employee of any corporation and every other person who violates or fails to comply with or procures, aids, or abets in the violation of any provision of this Act shall be guilty of a misdemeanor and upon conviction thereof shall be punished by fine not to exceed Five Hundred ($500.00) Dollars, or by imprisonment in the county jail not exceeding one year or by both such fine and imprisonment, and the violations occurring on each day shall each constitute a separate offense.

(b) Any officer, agent, servant or employee of any motor carrier as hereinbefore defined, and any motor carrier as hereinbefore defined, who violates or failes [sic] to obey, observe or comply with any order, decision, rule or regulation, direction, demand or requirement of the Commission, shall be subject to and shall pay a penalty not exceeding Five Hundred ($500.00) Dollars, for each and every day of such violation. Such penalty to be recovered in any court of competent jurisdiction in Travis County, Texas, or in the county in which the violation occurs. Suit for such penalty or penalties shall be instituted and conducted by the Attorney General of the State of Texas, or by the County or District Attorney in the county in which the violation occurs, in the name of the State of Texas and by direction of the Railroad Commission of Texas.

1929 Tex.Gen.Laws, ch. 314, §§ 16(a–b), at 706.

3. In 1941, section 6cc was amended by substituting ten hours for fourteen hours. 1941 Tex. Gen.Laws, ch. 71, § 6, at 86. The statute has not been changed since 1941.

The Revised Penal Code, effective January 1, 1974, added article 6.02 to provide some uniformity in the Texas Penal Code concerning the requirement of culpability.[4] Article 6.02(b) says that a culpable mental state is required unless the definition of an offense dispenses with it. The Penal Code defines offenses as misdemeanors, art. 1.07(21), and felonies, art. 1.07(14). It does not define or relate to civil penalties. The same act of the Sixty-Third Legislature that enacted article 6.02 of the Penal Code expressly transferred section 16 of the Motor Carrier Act back to its original place in article 911b of the civil statutes. 1973 Tex. Gen.Laws, ch. 399, § 5, at 995–96f. As stated previously, the law book company, and not the legislature, had moved section 16 into the Penal Code and assigned it a number. The civil penalties for violation of the motor carrier act were neither enacted nor intended by the Legislature to be part of the Penal Code. When the Legislature made culpability a general requirement for misdemeanors and felonies, it simultaneously expressly ordered that both sections 16(a) and 16(b) be removed from the Penal Code and restored in the civil statutes as originally intended.

Article 6.02 became effective in its requirement of culpability on January 1, 1974. On that date, section 16(b), by legislative mandate, was no longer compiled as a penal statute. Article 6.02 of the Penal Code thus does not apply to section 16(b) of article 911b.

### General Welfare Offenses

Civil penalty statutes are of comparatively recent historical origin. These offenses have been termed "public welfare offenses." Sayre, *Public Welfare Offenses*, 33 Colum.L.Rev. 55 (1933). The development is the natural result of two pronounced movements marking twentieth century criminal administration, i.e., (1) the shift of emphasis from the protection of individual interests that marked nineteenth century criminal administration to the protection of public and social interests, and (2) the growing utilization of the criminal law machinery to enforce, not only the true crimes of the classic law, but also a new type of twentieth century regulatory measure involving no moral delinquency. Sayre, *supra* at 67.

Knowledge and intent were early excused in proof of minor crimes.[5] The early cases

---

**4.** § 6.02. Requirement of Culpability

(a) Except as provided in Subsection (b) of this section, a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.

(c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b) of this section, intent, knowledge, or recklessness suffices to establish criminal responsibility.

(d) Culpable mental states are classified according to relative degrees, from highest to lowest, as follows:
(1) intentional;
(2) knowing;
(3) reckless;
(4) criminal negligence.

(e) Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged.

Tex.Penal Code Ann. § 6.02 (Vernon 1974).

**5.** As early as 1933 Sayre assembled this general list of crimes that did not require proof of *mens rea*:

(1) Illegal sales of intoxicating liquor;
(a) sales of prohibited beverage;
(b) sales to minors;
(c) sales to habitual drunkards;
(d) sales to Indians or other prohibited persons;
(e) sales by methods prohibited by law.
(2) Sales of impure or adulterated food or drugs;
(a) sales of adulterated or impure milk;
(b) sales of adulterated butter or oleomargarine;
(3) Sales of misbranded articles;
(4) Violations of anti-narcotic acts;
(5) Criminal nuisances;
(a) annoyances or injuries to the public health, safety, repose or comfort;
(b) obstructions of highways;
(6) Violations of traffic regulations;
(7) Violations of motor-vehicle laws;
(8) Violations of general police regulations, passed for the safety, health or well-being of the community.

Sayre, *supra* at 73.

in this country arose in the courts of Massachusetts and concerned primarily the sale of liquor and adulterated milk. *See, e.g. Commonwealth v. Boynton*, 2 Allen 160 (Mass. 1861); *Commonwealth v. Farren*, 9 Allen 489 (Mass.1864). The doctrine soon spread to other states and other types of police regulations. *See* cases cited in Sayre, *supra* at 65 n.41, 66 n.43. The issue found its way to the United States Supreme Court in a criminal case, *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922). In *Balint*, defendant was indicted for violating the Narcotic Act of 1914, which prohibited the sale of opium without the permission of the Commissioner of Internal Revenue. In holding that the statute did not require proof of the defendant's intent, the court stated:

It has been objected that punishment of a person for an act in violation of law when ignorant of the facts making it so, is an absence of due process of law. But that objection is considered and overruled in *Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 69, 70 [30 S.Ct. 663, 666, 54 L.Ed. 930], in which it was held that in the prohibition or punishment of particular acts, the State may in the maintenance of a public policy provide "that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance." Many instances of this are to be found in regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of *mala in se*.

*Id.* at 252, 42 S.Ct. at 302.

The *Balint* analysis was later referred to by Judge Frankfurter in *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), to show the distinction between criminal and civil penalties:

Punitive ends may be pursued in civil proceedings, and, conversely, the criminal process is frequently employed to attain remedial rather than punitive ends. It is for this reason that *scienter* has not been deemed to be a requirement in some criminal prosecutions. "Many instances of this are to be found in regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes ..." *United States v. Balint*, 258 U.S. 250, 252 [42 S.Ct. 301, 302, 66 L.Ed. 604].

*Id.* 317 U.S. at 554, 63 S.Ct. at 389. (Frankfurter, J., concurring).

In *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943), Justice Frankfurter was concerned with a case in which a corporate officer was convicted on charges that the corporation shipped adulterated and misbranded drugs in interstate commerce in violation of section 301 of the Federal Food, Drug and Cosmetic Act. Justice Frankfurter stated:

The prosecution to which Dotterweich was subjected is based on a now familiar type of legislation whereby penalties serve as effective means of regulation. Such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger. *United States v. Balint*, 258 U.S. 250 [42 S.Ct. 301, 66 L.Ed. 604]. And so it is clear that shipments like those now in issue are "punished by the statute if the article is misbranded [or adulterated], and that the article may be misbranded [or adulterated] without any conscious fraud at all. It was natural enough to throw this risk on shippers with regard to the identity of their wares ..." *United States v. Johnson*, 221 U.S. 488, 497–98 [31 S.Ct. 627, 628, 55 L.Ed. 823].

\* \* \* \* \* \*

Balancing relative hardships, Congress has preferred to place it upon those who have at least the opportunity of informing themselves of the existence of conditions imposed for the protection of consumers before sharing in illicit commerce,

rather than to throw the hazard on the innocent public who are wholly helpless. *Id.* 320 U.S. at 280–81, 285, 64 S.Ct. at 136, 138.

The Texas Court of Criminal Appeals has excused knowledge and intent even in purely criminal cases in harmony with these decisions of the United States Supreme Court. Prior to 1974, the Court of Criminal Appeals consistently rejected attacks upon traffic convictions on the grounds that there was no proof of intent. *See Vallejo v. State,* 408 S.W.2d 113 (Tex.Cr.App.1966); *Wilson v. State,* 168 Tex.Cr. 439, 328 S.W.2d 311 (1959) (on motion for rehearing); *Rowland v. State,* 166 Tex.Cr. 118, 311 S.W.2d 831 (1957); *Goodwin v. State,* 63 Tex.Cr. 140, 138 S.W. 399 (1911).

After the enactment of the Revised Penal Code in 1974, the court again held in *Zulauf v. State,* 591 S.W.2d 869 (Tex.Cr.App.1979), that a speeding violation did not require proof of a culpable mental state:

The clear command of Article 6701d, § 166, supra, that:

" .... [n]o person *shall* drive a vehicle on a highway at a speed greater than is reasonable and prudent under the circumstances then existing ..."

provides more than adequate support for our holding herein that the Legislature intended to make speeding a strict liability offense where liability *would not* be contingent upon the allegation of a culpable mental state.

\* \* \* \* \* \*

Given the absolutely obligatory character of the language consistently used by the Legislature in denouncing the offense of speeding, we are satisfied that the Legislature intended to and has dispensed with a culpable mental state as an element of the offense.

*Id.* at 872–73 (emphasis in original).

The Court of Criminal Appeals excused proof of intent in a conviction for driving while intoxicated. *Ex parte Ross,* 522 S.W.2d 214 (Tex.Cr.App.1975). *Ross* was a criminal action, but the contention in the case was that article 6.02 of the Revised Penal Code required proof of the culpable state of mind unless the statute expressly excused it. The offense had been codified as article 802 of the Penal Code, but in 1974 the legislature transferred that statute back to the civil statutes, as it did with section 16(b) of article 911b. The court rejected the contention that intent was an element of the offense, saying:

The issue which must be resolved is whether the Legislature through enactment of Sections 6.02 and 1.03(b) of the new Texas Penal Code intended to require proof of a culpable mental state in the offense of driving while intoxicated. First of all, if such was their intention, it seems strange that they would implement the same in the awkward manner the petitioner suggests. *It would have been much easier to merely include the requirement of proof of a culpable mental state by amending the statute when it was transferred from Article 802, Vernon's Ann.P.C., to Article 6701L–1, Vernon's Ann.C.S.*

*Id.* at 218 (emphasis added).

A culpable mental state was again excused in a criminal case, subsequent to 1974, notwithstanding the provisions of article 6.02. In *American Plant Food Corp. v. State,* 587 S.W.2d 679 (Tex.Cr.App.1979), defendant was assessed a $500 fine for violation of section 26.212 of the Texas Water Code. Section 26.213 of the Code provides that violation of the provisions of section 26.212 is a criminal misdemeanor offense. Defendant therefore argued that section 6.02 of the Penal Code was applicable and required proof of a culpable mental state. The court held:

We, too, are persuaded that the Legislature's intent in no longer requiring proof of knowledge when it amended the act in 1967 was to create a strict liability standard in which no proof of scienter is necessary. *If the Legislature had intended to require proof of a culpable mental state for this crime, it would have been much easier to merely include the requirement by amending the statute when it was transferred to Section 21.552 of the*

*Water Code in 1971 and when it was retransferred to Section 26.211 in 1977. . . .* The concept of strict liability is founded on the premise that the mere doing of the act constitutes the offense and the lack of intent "will not exonerate the party nor does this make the prohibited act any less harmful to society." [Citations deleted.] The Legislature in eliminating a mens rea element recognized the substantial risks to public health involved in even passive pollution and enacted the penal section of the Water Code in this manner to further its intent.

*Id.* at 685–86 (emphasis added). *See also City of Galveston v. State,* 518 S.W.2d 413 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ) (same result).

### Civil Penalties May Be Different From Crimes

The State proceeded in this case under section 16(b) of article 911b, not under section 16(a). The legislature manifested an intent that a violation of the Motor Carrier Act could be either a crime or a civil offense or both. If that be not the legislative intent, we attribute to them a useless piece of legislation. Section 16(a) is couched in terms of crime. It states that one who violates the proscribed act or failure to act will be "guilty" of a "misdemeanor" and upon "conviction" shall be punished by a "fine," and that each day's violation will be a separate "offense." In contrast with that language, section 16(b) states that a violation will subject one to a "penalty" for each day of "violation."

Our statutes are honeycombed with provisions for civil penalties. Depending upon particular legislative history and the wording of the statute, knowledge and intent may be required. *See State v. Harrington,* 407 S.W.2d 467 (Tex.1966). Ordinarily, however, a civil penalty statute makes no provision for knowledge or intent, and thus does not include culpability as an element. Imposing the requirements of scienter from the criminal law upon such regulatory statutes can undermine their purposes. That is the rule as to minor crimes, as we have already seen; *a fortiori,* it would be the rule for the lesser offense of civil penalties.

Knowledge and intent were not required in a suit by the State seeking civil penalties against one who violated the Water Well Drillers Act, article 7621e. *See Williams v. State,* 514 S.W.2d 772 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.).

This court again addressed the contention that knowledge or intent was necessary in a case to establish the State's right to recover civil penalties for violations of the deceptive trade practices act, article 5069, section 10.-02[6], in *State v. Credit Bureau of Laredo, Inc.,* 530 S.W.2d 288 (Tex.1975). We there followed the established construction of the Federal Trade Commission Act[7] and held:

> We disapprove the holding of the court of civil appeals that the State has the burden to prove that Credit Bureau "knowingly" violated the injunction. Section 10.01 of article 5069 is the relevant statute, and it does not contain the word "knowingly" or any synonym of that word.

*State v. Credit Bureau of Laredo, Inc., supra* at 293. *See also Pennington v. Singleton,* 606 S.W.2d 682, 689–90 (Tex.1980).

The civil penalties imposed by the Texas usury statutes are severe, but intent to

---

**6.** Article 5069, § 10.02 was repealed and reenacted as Tex.Bus.Com.Code Ann. § 17.46 in 1973.

**7.** *United States v. H. M. Prince Textiles, Inc.,* 262 F.Supp. 383, 388 (S.D.N.Y.1966) states the rule:

> [L]ack of willfulness or intention is not a valid defense to an action by the government to recover civil penalties. All that the government need prove is that a cease and desist order has in fact been violated, which has been done in this case. [Citations omit-

ted.] The reason for this is obvious. A cease and desist order is designed to induce the defendant to rid himself of any business practices which have the capacity to violate the order. The main objective is to insure the protection of the public which must be protected whether the violations are intentional or not. See *Standard Distributors v. F. T. C.,* 211 F.2d 7 (2d Cir. 1954); *Parke, Austin & Lipscomb, Inc. v. F. T. C.,* 142 F.2d 437 (2d Cir. 1944).

charge usury is not an element of the proof because the statute does not require it. This court in *Cochran v. American Savings and Loan Association of Houston*, 586 S.W.2d 849, 850 (Tex.1979), wrote:

> The subjective intent of the lender is irrelevant if, in fact, the lender has contracted for, charged or received interest on a loan in excess of the maximum permitted by law.

The Motor Carrier Act is a comprehensive act that regulates the equipment used and those who haul for hire over the highways of Texas between two incorporated cities.[8] *Oil Field Haulers Ass'n v. Railroad Commission*, 381 S.W.2d 183, 194 (Tex.1964); *Great National Life Insurance Co. v. Chapa*, 377 S.W.2d 632 (Tex.1964); *New Way Lumber Co. v. Smith*, 128 Tex. 173, 96 S.W.2d 282, 285–86 (1936). Those holding certificates or permits must display them in a conspicuous place on each side of the vehicle in plainly legible print which shows the number of the certificate or permit, the name of the carrier and the unit number of the vehicle. Letters and numbers must be at least two inches high. Article 911b, section 18. The evidence of the certificate or permit must therefore be plainly visible to shippers and the public.

One who hires a shipper can at once know whether it is lawfully authorized to haul goods for hire. To "hire" means to "procure." In *Mason Feed Store v. Starks*, 398 S.W.2d 392 (Tex.Civ.App.—Austin 1966, writ dism'd), a venue case over which this court lacked jurisdiction to review, Mason Feed Store had hired an uncertificated trucker to haul grain. The court held that the Feed Store by so doing, "procured, aided and abetted in the violation of article 911b." *Accord: U. S. v. Gunn*, 97 F.Supp.

476 (W.D.Ark.1950); *U. S. v. J and J Truck Leasing, Inc.*, 258 F.Supp. 105 (D.Kan.1966).

The court of civil appeals in this case held that knowledge or intent were required to prove a violation of section 16(a), the criminal part of section 16, and that this court had so ruled in *Carter v. William Sommerville and Son, Inc.*, 584 S.W.2d 274 (Tex. 1979). This is not a correct reading of *Sommerville*. *Sommerville*, unlike this case, was not a suit to recover civil penalties under section 16(b). That was a death case in which the plaintiff, Carter, relied upon a breach of section 16(a) as a basis for negligence *per se*. This court in *Sommerville* held that section 16(a) was not the kind of a crime that states a standard for negligence cases, and it was exclusively upon that basis that it disposed of the case. It disapproved the prior holding in *Mason Feed Store v. Starks, supra*, which treated a violation of section 16(a) as negligence *per se*.

Instead of holding that knowledge and intent were required to prove a violation of section 16(a), this court expressly reserved that question because it did not reach it. *Carter v. William Sommerville and Son, Inc., supra* at 279 n.4.

The courts below were in error in granting and approving the summary judgment for the defendant Houdaille. Knowledge or intent are not essential elements to the offense stated in section 16(b), article 911b.

The judgments of the courts below are reversed and the cause is remanded to the trial court.

DENTON, J., dissents in an opinion in which GREENHILL, C. J., and BARROW and CAMPBELL, JJ., join.

---

8. The rapid increase of motor carrier traffic, and the fact that under existing law many motor trucks are not effectively regulated, have increased the dangers and hazards on public highways and make it imperative that more stringent regulations should be employed, to the end that the highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that discrimination in rates charged may be eliminated; that congestion of traffic on the highways may be minimized; that the use of the highways for the transportation of property for hire may be restricted to the extent required by the necessity of the general public . . . .

Tex.Rev.Civ.Stat.Ann. art. 911b, § 22b.

DENTON, Judge, dissenting.

I respectfully dissent. I am convinced the majority opinion has not correctly construed article 911b, section 16(b).[1]

Following the entry of an agreed judgment for $3,500.00 against L & L Trucking Company for its violation of the Texas Motor Carrier Act, the State filed suit against Houdaille Industries seeking some $6,600.00 in civil penalties under section 16(b). The State alleged that Houdaille was guilty of procuring, aiding, or abetting L & L's violation of the Act because it had hired the uncertified motor carrier to transport its products between incorporated Texas cities over public highways.

Whether allegations and proof of intent and knowledge on the part of a purported procurer, aider, or abettor are required to recover civil penalties pursuant to section 16(b) of the Texas Motor Carrier Act is the issue presented to this Court. This precise question has never been considered by the Court.[2] However, whether knowledge and intent must be established upon the part of a defendant prior to assessing civil penalties has been considered by this Court in connection with several other statutes. See, e.g., State v. Harrington, 407 S.W.2d 467 (Tex. 1966); Bloom v. Texas State Bd. of Pharmacy, 390 S.W.2d 252 (Tex.1965).

In Bloom v. Texas State Bd. of Pharmacy, 390 S.W.2d 252 (Tex.1965), we held that article 4542a, § 12(h) requires the state to allege and prove a pharmacist "knowingly" or "intentionally" substituted a prescribed drug without authorization before canceling, revoking, or suspending his license despite the absence of any such requirement within the statute's express language. Id. at 256–57. The Court noted the previous holding in Garner v. Texas State Bd. of Pharmacy, 304 S.W.2d 530 (Tex.Civ.App.— Eastland 1957, writ ref'd), wherein it was

held that section 12(f) of article 4542a, which provides that the board can revoke a pharmacist's license if he "directly or indirectly aids or abets in the practice of pharmacy any person not duly licensed to practice under this Act," was determined to require proof of knowledge on the pharmacist's part. Id. at 534; see Bloom, supra, at 256. We concluded in Bloom that if Garner was not subject to the civil penalties of section 12(f) in the absence of knowledge which he could have easily obtained, then despite the absence of any specific requirement within the statute's provisions, proof of knowledge or intent was required to impose civil penalties pursuant to section 12(h). Bloom, supra, at 256–57.

In Harrington v. State, 407 S.W.2d 467 (Tex.1966), we held that proof of knowledge and intent was not a prerequisite to the imposition of the civil penalties provided for by article 6036. Like article 4542a, § 12(h), the language of article 6036 did not specifically require proof of knowledge or intent at the time of the Harrington decision. Distinguishing article 6036 from article 4542a, § 12(h) on the basis of legislative history, we held that article 6036 did not require proof of knowledge or intent. See Harrington, supra, at 478. Unlike article 4542a, § 12(h), article 6036 contained an express knowledge requirement at one time. As originally enacted, article 6036 did not contain words of culpability; however, the words "knowingly and willfully violating" were added to the statute by amendment. In a subsequent amendment the words were deleted, thereby manifesting the Legislature's intent to render knowledge and intent immaterial to the application of article 6036. See Harrington, supra, at 478.

As in Harrington, the court of civil appeals in City of Galveston v. State, 518

---

1. Unless otherwise indicated, all statutory references are to Vernon's Revised Civil Statutes Annotated.

2. In Carter v. William Sommerville & Son, Inc., 584 S.W.2d 274 (Tex.1979), we held that a violation of section 16(a), article 911b, does not constitute negligence per se. In a footnote thereto, we noted that the question whether

actual knowledge, criminal intent, and active or affirmative encouragement is required to enforce the Motor Carrier Act through section 16(a)'s misdemeanor fines and section 16(b)'s civil penalties was not reached because of the manner in which the case was disposed. Id. at 279 n.4.

S.W.2d 413 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ), used legislative history to determine that proof of knowledge and intent was not necessary to the imposition of civil penalties under Tex.Water Code Ann. § 21.252. In *Williams v. State*, 514 S.W.2d 772 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.), which was cited in *City of Galveston, supra,* the court of civil appeals purported to follow our decision in *Harrington* in holding that article 7621e did not require proof of knowledge and intent. The *Williams'* court, however, failed to examine or acknowledge the statute's legislative history in its reasoning, as we had done in *Harrington.* Instead, as the majority has done here, the court of civil appeals concluded that *Harrington* controlled on the ground that because article 7621e only assessed civil penalties, proof of knowledge and intent was unnecessary. *Williams, supra,* at 777. Assuming arguendo that proof of knowledge and intent was required, the court also noted that Williams' admissions that he had never had a license or certificate of registration from the Texas Well Drillers Board and that despite the fact he was familiar with the application forms he had never applied for one because he knew he could not qualify for a license had satisfied these elements as a matter of law. *Id.* These cases demonstrate, as the majority's opinion notes, that depending upon particular legislative history and intent, and the wording of the statute, knowledge and intent may be required. *See, e.g., State v. Harrington,* 407 S.W.2d 467 (Tex.1966); *Bloom v. Texas State Bd. of Pharmacy,* 390 S.W.2d 252 (Tex.1965).

The Motor Carrier Act was enacted in Texas by the Forty-First Legislature in 1929. *See* 1929 Tex.Gen.Laws, ch. 314, at 698–710. Although we are only concerned with section 16(b), section 16(a) is relevant to our discussion as an aid to section 16(b)'s construction. The record reveals that the State recognizes section 16(a), which provides that a violation constitutes a misdemeanor, as the penal provision of article 911b. *See State's response to Houdaille's Motion for Summary Judgment, Transcript,* at 46. The State contends that unlike section 16(a), section 16(b) is not penal and should not require proof of knowledge and intent. These contentions are based upon the fact that section 16(b) assesses a "civil penalty," rather than a criminal sanction for the violation of its provisions.

The language of subsections (a) and (b) is identical wherein they set out conduct constituting a violation of the respective provisions. The exact conduct required to violate section 16(a) is necessary for a violation of section 16(b). Moreover, the portion of section 16(b) describing conduct which violates its provisions provides that a party who is guilty of violating section 16(b)—who would be simultaneously guilty of violating section 16(a)—"*shall in addition* be subject to and shall pay a penalty." Tex. Rev.Civ.Stat.Ann. art. 911b, § 16(b) (emphasis added). Section 16(b)'s civil penalty is cumulative of the criminal penalty assessed in section 16(a); it does not penalize a different offense. As the court wrote in *Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274 (Tex.1979): "Section 16(a) of the Act declares that any person or corporation who 'procures, aids, or abets in the violation of any provision of this Act' is guilty of a misdemeanor punishable by fine. Section 16(b) creates a civil penalty, . . ., *for the same offense.*" *Id.* at 277 (emphasis added).

The majority's opinion correctly states that the Texas Motor Carrier Act is a comprehensive Act designed to regulate the equipment used and those who haul for hire over Texas highways between incorporated cities. *See Oil Field Haulers Ass'n v. Railroad Comm'n,* 381 S.W.2d 183, 194 (Tex. 1964); *Great Nat'l Life Ins. Co. v. Chapa,* 377 S.W.2d 632, 634–35 (Tex.1964); *New Way Lumber Co. v. Smith,* 128 Tex. 173, 96 S.W.2d 282, 285–86 (1936). When construing such a statute the Court must use diligence to effectuate the Legislature's intent as gleaned from the language of the entire statute and, if available, from an express statement of legislative intent within the statute. Section 22b of the Texas Motor

Carrier Act contains such an expression of legislative intent.[3]

Benefiting public welfare through regulations which, inter alia, render highways safer by minimizing traffic congestion, reducing wear to roadways, and eliminating potential rate discrimination by carriers is the stated policy of the Motor Carrier Act. Tex.Rev.Civ.Stat.Ann. art. 911b, § 22b; *see Oil Field Haulers, supra,* at 194; *Great Nat'l Life Ins. Co., supra,* at 634–35. In *Tarry Moving & Storage Co. v. Railroad Comm'n,* 367 S.W.2d 322 (Tex.1963), we stated that the paramount consideration in state regulations controlling common carriers is that of the public interest. *Id.* at 324.

This is not a case involving a manufacturer or distributor of an adulterated product intended for human consumption, nor does it involve a greedy lender or an unscrupulous merchant. Instead, this case involves a shipper, a member of the class intended to be protected rather than regulated by the Texas Motor Carrier Act. *See New Way Lumber Co., supra,* at 285–86. I fail to see how the State's infliction of civil penalties upon a shipper using an uncertificated carrier, in the absence of requiring that the State plead and prove knowledge and intent on the shipper's part to procure, aid, or abet a violation of the Act, facilitates the furtherance of the Legislature's goals. Prosecuting shippers on a strict liability basis will do little to curb carrier abuses. Imposing a burden to prove a shipper's knowledge and intent upon the state would seem unlikely to hinder its effectiveness in prosecuting truly culpable shippers who knowingly and intentionally hire unlicensed carriers for such illicit purposes as receiving kickbacks, reduced tariffs, or to ship contraband.

Although Houdaille is a commercial shipper which of necessity employs common carriers with some regularity, the construction of section 16(b) announced by this Court is to be equally applicable to the "casual," even "one-time," private shipper. Thus, anyone who naively hires a moving company, selected from the phone book's yellow pages or newspaper's classified section, to transport their worldly possessions without ascertaining whether the carrier *in fact* possesses a Railroad Commission Motor Carrier permit, will be subject to section 16(b)'s "civil penalties" if the carrier lacks the requisite certificate. Regardless of whether they inquire if the carrier possessed a permit and are lied to,[4] and irrespective of whether they know that a carrier is required to have a certificate of convenience and necessity, such an unenlightened individual can be the target of enforcement by the Attorney General's Office under the majority's holding.

As shippers constitute that portion of the Act's protected class primarily intended to be guarded against carrier abuses, the imposition of no fault liability will unreasonably penalize them. Shippers should be entitled to presume that one who holds himself out to the public as being a bona fide carrier is in compliance with the applicable statutes. This favorable presumption should persist until the carrier's conduct indicates to the contrary or the shipper receives some

**3.** Section 22b provides:

The business of operating as a motor carrier of property for hire along the highways of this State is declared to be a business affected with the public interest. The rapid increase of motor carrier traffic, and the fact that under existing law many motor trucks are not effectively regulated, have increased the dangers and hazards on public highways and make it imperative that more stringent regulation should be employed, to the end that the highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that discrimination in rates charged may be eliminated; that congestion of traffic on the highways may be minimized; that the use of the highways for the transportation of property for hire may be restricted to the extent required by the necessity of the general public, and that the various transportation agencies of the State may be adjusted and correlated so that the public highways may serve the best interest of the general public.

**4.** During oral arguments counsel for the Attorney General's Office stated that the fact a shipper inquired about the necessary permit and was lied to by the carrier about the same is not a defense to prosecution under Section 16(b), rather, it would be considered as a mitigating factor when determining the amount of the civil penalty to be assessed.

knowledge which would put him on notice of the carrier's noncompliance.

The rippling effect of the harsh construction given section 16(b) by the majority will go beyond affecting uninformed shippers. The statute expressly states that *"[e]very officer, agent, servant or employee of any corporation and every other person who . . . aids . . . in the violation . . . shall pay a penalty. . . ."* Tex.Rev.Civ.Stat.Ann. art. 911b, § 16(b) (emphasis added). Thus, service station attendants and mechanics, as well as anyone else who unsuspectingly facilitates the continued progress of an unlicensed carrier down the Texas highways, are liable for civil penalties under the majority's interpretation of section 16(b).

Although termed a "civil penalty," section 16(b)'s sanctions are of a punitive nature and should not be construed to create liability without fault. Contrary to the majority's holding, allegations and proof of knowledge and intent on the part of the purported "procurer, aider, or abettor" should be required of the State. To construe section 16(b) as imposing strict liability will subject innocent, albeit unwitting shippers to broad and wideranging liability not reasonably contemplated by the Legislature in its efforts to regulate motor carrier traffic. I believe that the court of civil appeals correctly concluded that the "duty to supervise and regulate the transportation of property for compensation or hire by motor vehicle on any public highway in [Texas]" is imposed upon the Railroad Commission, rather than shippers. Tex.Rev.Civ. Stat.Ann. art. 911b, § 4.

I would affirm the judgment of the court of civil appeals.

GREENHILL, C. J., and BARROW and CAMPBELL, JJ., join in this dissenting opinion.